IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| BRENDA K. DRIVER, | ) | |
| | ) | |
|     *Plaintiff*, | ) | |
| | ) | No. 2:08-cv-0001 |
| v. | ) | Judge Nixon |
| | ) | Magistrate Judge Griffin |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
|     *Defendant*. | ) | |

## ORDER

Pending before the Court is Plaintiff Brenda K. Driver's ("Plaintiff") Motion for Judgment on the Administrative Record ("Plaintiff's Motion") (Doc. No. 14) with supporting Memorandum (Doc. No. 15). Defendant Michael J. Astrue, Commissioner of Social Security ("Defendant" or "Commissioner") filed a Response in Opposition (Doc. No. 20), to which Plaintiff filed a Reply (Doc. No. 23). Magistrate Judge Griffin issued a Report and Recommendation ("Report") that Plaintiff's Motion be denied and that the decision of the Commissioner be affirmed. (Doc. No. 24.) Plaintiff filed Objections to the Report. (Doc. No. 25.) Upon review of the Magistrate Judge's Report and for the reasons discussed herein, the Court **ADOPTS** the Report in its entirety and **DENIES** Plaintiff's Motion.

**I.     BACKGROUND**

*A. Procedural Background*

Plaintiff filed an application for disability insurance benefits and supplemental security income benefits with the Social Security Administration ("SSA") on March 11, 2004, alleging a disability onset date of August 26, 2003, due to fibromyalgia, anxiety, depression, skin cancer, arthritis, and diabetes. (Tr. 52, 56.) Plaintiff's application was denied initially (Tr. 42-48), and also upon reconsideration (Tr. 49-50). Plaintiff filed a request for a hearing by an ALJ on December 27, 2004. (Tr. 34-35.)

Administrative Law Judge ("ALJ") George L. Evans III presided over the hearing on May 5, 2006. (Tr. 544-68.) Plaintiff appeared and testified. (Tr. 549-68.) On October 11, 2006, the ALJ issued an unfavorable decision based on the finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations. (Tr. 15-25.) Specifically, the ALJ made the following findings of fact and conclusions of law:

1. The claimant met the insured status requirements of the Social Security Act through December 31, 2008.

2. The claimant has not engaged in substantial gainful activity since August 26, 2003, the alleged onset date (20 C.F.R. 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

\* \* \*

3. The claimant has the following severe impairments: fibromyalgia, arthritis, diabetes mellitus, hypertension, anxiety, depression, and sleep apnea (20 C.F.R. 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d) and 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

\* \* \*

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work with a required sit/stand option. Light work, as defined by the regulations, involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm and leg controls. To be considered capable of performing a full or wide range of light work, an individual must have the ability to do substantially all of these activities. If an individual can do light work, it will be determined that the individual can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time [20 C.F.R. 404.1567(b), 416.967(b) (1994)].
>
> \* \* \*
>
> 5. The claimant is capable of performing past relevant work as an assembly worker. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 C.F.R. 404.1565 and 416.965).
>
> \* \* \*
>
> 6. The claimant has not been under a "disability," as defined in the Social Security Act, from August 26, 2003, through the date of this decision (20 C.F.R. 404.1520(f) and 416.920(f)).

*Id.*

Plaintiff sought review by the Appeals Council (Tr. 12-14), and on November 1, 2007, the Appeals Council denied her request, making the ALJ's decision the final decision of the Commissioner (Tr. 5-9). On January 8, 2008, Plaintiff filed this action to obtain judicial review of the ALJ's final decision. (Doc. No. 1.) The Court has jurisdiction under 42 U.S.C. § 405(g). Plaintiff filed a Motion for Judgment on the Record on April 4, 2008 (Doc. No. 14) with supporting Memorandum (Doc. No. 15). Defendant filed a Response in Opposition to the Motion for Judgment on the Record on July 21, 2008 (Doc. No. 20), to which Plaintiff filed a Reply on September 3, 2008 (Doc. No. 23). On December 29, 2010, Magistrate Judge Griffin recommended the ALJ's decision be affirmed and Plaintiff's Motion be denied. (Doc. No. 24.)

Plaintiff asserts five objections to the Magistrate Judge's recommended findings.  (Doc. No. 25.) Specifically, Plaintiff objects to:

(1) The recommended finding that the record fails to establish Plaintiff's inability to engage in any substantial gainful activity due to a combination of impairments that have lasted for a continuous period of not less than twelve months.

(2) The recommended finding that Plaintiff did not meet the requirements of Listing 14.09.

(3) The recommended finding that Dr. Hooper's notes do not support the limitations he assessed on May 3, 2006.

(4) The recommended finding that Dr. Hooper's assessment is inconsistent with his own treatment records and that the ALJ was not bound to give controlling weight to the opinion of Dr. Hooper.

(5) The recommended finding that the demands of an assembly worker position accommodate Plaintiff's assessed residual functional capacity as determined by the ALJ.

*Id.*  The Court discusses the merits of Plaintiff's objections below.

B.     *Factual Background*

The Court adopts the portion of the Magistrate's Report addressing the relevant facts of the record (Doc. No. 24 at 2-14).

II.    STANDARD OF REVIEW

The Court's review of the Report is *de novo*.  28 U.S.C. § 636(b).  This review, however, is limited to "a determination of whether substantial evidence exists in the record to support the [Commissioner's] decision and to a review for any legal errors."  *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986).  Title II of the Social Security Act provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  Accordingly, the reviewing court will uphold the ALJ's decision if it is supported by substantial evidence.  *Garner v.*

*Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Substantial evidence is a term of art and is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Comm'r of Soc. Sec.*, 105 F.3d 244, 245 (6th Cir. 1996) (citing *Consol. Edison*, 305 U.S. at 229).

"Where substantial evidence supports the Secretary's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion." *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc)). This standard of review is consistent with the well-settled rule that the reviewing court in a disability hearing appeal is not to weigh the evidence or make credibility determinations, because these factual determinations are left to the ALJ and to the Commissioner. *Hogg v. Sullivan*, 987 F.2d 328, 331 (6th Cir. 1993); *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). Thus, even if the Court would have come to different factual conclusions as to the Plaintiff's claim on the merits than those of the ALJ, the Commissioner's findings must be affirmed if they are supported by substantial evidence. *Hogg*, 987 F.2d at 331.

### III. PLAINTIFF'S OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT

    A. *Plaintiff objects to the Magistrate Judge's recommended finding that the record fails to establish Plaintiff's inability to engage in any substantial gainful activity due to a combination of impairments that have lasted for a continuous period of not less than twelve months.*

Plaintiff asserts that treatment records from her primary treating physician, Dr. Hooper, satisfy the burden of proof required to establish an inability to engage in any substantial gainful

5

activity. (Doc. No. 25 at 2.) Specifically, Plaintiff refers the Court to a discussion of her treating physicians' diagnoses in Plaintiff's memorandum. (*Id.* (referring to Doc. No. 15 at 7-11).) However, the discussion contained in the memorandum appears only to attempt to persuade the Court that Plaintiff suffers from fibromyalgia (*Id.* at 8) (stating that "Plaintiff has all of the classic symptoms of [fibromyalgia]"), that fibromyalgia can be grounds for a finding of disability (*Id.* at 10-11), and conclusory statements that such suffering in Plaintiff's case creates an inability to engage in any substantial gainful activity.

All objections filed in response to a Report and Recommendation must state with particularity the specific portions of the Report to which each objection is raised. Plaintiff's claim amounts to an objection to the Magistrate Judge's general finding of substantial evidence for the ALJ's decision that Plaintiff is not disabled and not entitled to benefits. Accordingly, Plaintiff has failed to articulate to which portion of the Report she objects. Because this objection essentially challenges the overall finding that Plaintiff is not disabled, and its substance is discussed in specificity through the remaining objections below, it will not be addressed here.

> B. *Plaintiff objects to the Magistrate Judge's recommended finding that she did not meet the requirements of Listing 14.09.*

Plaintiff asserts that her combination of ailments meets the requirements for listed disabilities under 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 14.09D,[1] and that the Report erred in finding that her ailments did not satisfy this Listing. Specifically, she claims that her fibromyalgia causes her to suffer from fatigue and malaise, as well as marked limitations on her activities of daily living. (Doc. No. 25 at 4.) To meet or equal the requirements of Listing

---

[1] Although Plaintiff did not specifically refer to Listing 14.09 in her memorandum, Plaintiff's counsel did specify that listing during the hearing before the ALJ. (Tr. 550.)

14.09D, Plaintiff must show (1) that she has "[r]epeated manifestations of inflammatory arthritis, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss)," and (2) marked limitations of her daily living, social functioning, or ability to complete tasks "in a timely manner due to deficiencies in concentration, persistence, or pace."  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 14.09D.

Plaintiff may satisfy the first prong of Listing 14.09D.  Plaintiff was diagnosed with osteoarthritis and rheumatoid arthritis (Tr. 141, 144, 146, 218, 438, 440, 469-72) and suffers from chronic fatigue (Tr. 472).  Although the record provides no evidence of fever or involuntary weight loss, Plaintiff's general medical history and illnesses could support the claim that Plaintiff exhibits the constitutional symptom of malaise.

Assuming, however, that Plaintiff does suffer from malaise, there is substantial evidence to support the finding that Plaintiff does not satisfy the second prong of Listing 14.09D, requiring a showing of a marked limitation of daily living, social functioning, or ability to complete tasks in a timely manner due to deficiencies in concentration, persistence, or pace. Plaintiff contends that she has marked limitations of activities of daily living and social functioning due to her fatigue, lack of sleep, and constant need for an assistive device to mitigate her pain.  (Doc. No. 25 at 4.)  Evidence that a claimant possesses the capacity to care for herself, such as the ability to attend church, visit friends or relatives, drive a car, shop, cook, clean, read, and watch television, lends support to an ALJ's finding that the claimant does not have a marked limitation on her activities of daily living or social functioning.  *See Hogg*, 987 F.2d at 333; *Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 150 (6th Cir. 1990).  Plaintiff testified that she is able to attend church on occasion, visit with family and her pastor, drive a car, shop independently, cook simple meals, dust her living room, wash clothes, and read and watch

television frequently. (Tr. 351-52, 562-64.) Such admissions serve as substantial evidence for a finding that Plaintiff possesses the capacity to care for herself and that her ability to complete a range of daily living and social functioning activities is not markedly limited.

Evidence from multiple psychological examinations and evaluations also supports the ALJ's finding. After presenting to Volunteer Behavioral Health Care System Medical Health center in November 2003 with depression exacerbated by her chronic pain, Plaintiff was released in March 2004 with an improved ability to function and cope with pain, and was found to be less depressed, anxious, and isolated. (Tr. 246.) At this time, Plaintiff was assigned a Global Assessment of Functioning ("GAF") score of 55.[2] *Id.* A GAF score within the range of 51-60 means that the individual being assessed has "[m]oderate symptoms [or] moderate difficulty in social, occupational, or school functioning." Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 43 (4th ed. 2000) [hereinafter *Mental Disorders*). Subsequent Disability Determination Section ("DDS") evaluations conducted by Dr. Blazina on June 24, 2004 and Dr. Regan on July 3, 2004 indicated that Plaintiff's daily living and social functioning limitations were even less marked. Dr. Blazina concluded that Plaintiff's "ability to understand and remember" and "to sustain concentration and persistence" was not "noticeably limited" and that "[h]er social interaction abilities [were not] significantly limited." (Tr. 353.) Dr. Blazina assigned Plaintiff a GAF score of 65 to 70, an improvement over Plaintiff's earlier score of 55. A GAF score within the range of 61-70 means that an individual has "[s]ome mild symptoms [or] some difficulty in social, occupational, or school functioning, but generally functioning pretty well, has some meaningful interpersonal relationships." *Mental Disorders* at 34. Dr.

---

[2] The GAF scale considers "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 43 (4th ed. 2000).

Regan similarly concluded that Plaintiff had only moderate difficulty in maintaining concentration, persistence, or pace, and that her activities of daily living and social functioning were only mildly restricted. (Tr. 378-79.)

The ALJ noted that Plaintiff may have shown some signs of marked limitation on one occasion. Ms. Matthews, a DDS examiner and licensed psychological examiner ("LPE"), found on August 8, 2005 that Plaintiff was markedly limited "in her ability to maintain concentration, persistence, and pace," and was severely limited "in her ability to handle the everyday stressors of the workplace." (Tr. 542.) Plaintiff was deemed credible during this interview, but was noted to be "in an extremely depressed mood, crying and sobbing throughout the assessment." (Tr. 542.) Ms. Matthews also noted that Plaintiff "would not be limited in her ability to appropriately relate to others, either in public or private" (Tr. 541), and "would not be mentally limited in her ability to understand, remember and carryout [sic] simple instructions" (Tr. 542). Despite the restrictions found in this assessment, the Court finds that the medical evidence on the whole, together with Plaintiff's testimony regarding her daily activities, suffices as substantial evidence to support the ALJ's finding that Plaintiff's daily living and social abilities are not markedly limited, and therefore that her condition does not satisfy Listing 14.09D.

> C. *Plaintiff objects to the Magistrate Judge's recommended finding that Dr. Hooper's notes do not support the limitations he assessed on May 3, 2006.*

Plaintiff appears to raise the substance of this objection twice in her third and fourth objections. (Doc. No. 24 at 1.) Therefore, both objections will be addressed fully in this Section. The ALJ found that Dr. Hooper's Medical Assessment of Ability to Do Work-Related Activities ("Assessment") was not supported by the medical evidence as a whole. (Tr. 24.) The

9

Magistrate Judge opined that there was substantial evidence for this finding, determining that Dr. Hooper's limitation on Plaintiff's abilities to push, pull, reach, handle, finger, and feel based on Plaintiff's hand numbness and tingling was unsupported by, and inconsistent with, Dr. Hooper's treatment history records. (Doc. No. 24 at 23-24.) Plaintiff asserts that Dr. Hooper's Assessment is in fact supported by, and is not inconsistent with, his treatment records and Plaintiff's medical history. (Doc. No. 25 at 2.) Specifically, Plaintiff claims that her host of other serious maladies and problems minimized the magnitude of her problems with her hands within Dr. Hooper's records. (Doc. No. 25 at 2.) Plaintiff cites a May 1995 visit to Dr. Hooper, at which she presented with symptoms of hand tingling and Dr. Hooper diagnosed her with early bilateral carpal tunnel syndrome (Tr. 219). Plaintiff also asserts that Dr. Hooper received copies of Dr. Knapp's notes discussing Plaintiff's "puffiness and tenderness to palpitation of the small joints of the hands and wrists with trace pedal edema" (Tr. 405), providing evidentiary support for Dr. Hooper's later Assessment (Doc. No. 25 at 2).

The Report recommended a finding of substantial evidence, in the form of Dr. Hooper's inconsistency between his records and his Assessment, for the ALJ's determination that Dr. Hooper's Assessment was not supported by the record as a whole. The Report found that Dr. Hooper's records do not support the limitation he assessed on Plaintiff's exertional and manipulative abilities with regard to her hands. In assessing the weight due to a medical opinion, "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight [the SSA] will give that opinion." 20 C.F.R. § 404.1527(d)(3). An ALJ may properly reject the opinion of a treating physician where that opinion is not sufficiently supported by medical findings. *See, e.g.*, *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 652 (6th Cir. 2006) (en banc); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d

525, 530 (6th Cir. 1997); *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 287 (6th Cir. 1994). Additionally, a treating physician's conclusory statement that a claimant suffered from a specific ailment does not constitute objective evidence of an impairment which could be expected to result in disabling effects. *Casey v. Sullivan*, 987 F.2d 1230, 1234 (6th Cir. 1993). Dr. Hooper's records contain only one mention of hand tingling with a diagnosis of early bilateral carpal tunnel syndrome (Tr. 219) and provide no mention of hand numbness. Additionally, his records provide no objective medical signs or laboratory findings to support his finding that Plaintiff's exertional and manipulative abilities are impeded by her hand numbness and tingling, nor is there any indication that Dr. Hooper was aware of Dr. Knapp's notes on Plaintiff's hand puffiness and edema. Accordingly, the Magistrate Judge did not err in finding that Dr. Hooper's Assessment is not supported by his own record and that there is substantial evidence for the ALJ's finding that Dr. Hooper's Assessment is not supported by the record as a whole.

> D. *Plaintiff objects to the Magistrate Judge's recommended finding that the Dr. Hooper's assessment is inconsistent with his own treatment records and that the ALJ was not bound to give controlling weight to the opinion of Dr. Hooper.*

Plaintiff asserts that the ALJ was bound to give controlling weight to Dr. Hooper's Assessment of Plaintiff's work-related capabilities. Plaintiff urges that Dr. Hooper's Assessment was not inconsistent with his own notes or the record as a whole, and therefore, the ALJ was bound to give his opinion significant, if not controlling, weight. (Doc. No. 25.) Specifically, Plaintiff argues that Dr. Hooper inadvertently indicated on his Assessment that he based his opinion primarily on Plaintiff's subjective complaints, but, instead, his diagnoses were confirmed by objective findings. (*Id.* at 3 (referencing Tr. 472).)

11

In evaluating the medical evidence in support of a disability claim, an ALJ must adhere to several governing standards. Chief among these standards is the greater deference generally afforded to the opinions of treating physicians as opposed to non-treating physicians, commonly known as the treating physician rule. Where a treating physician's opinion on "the nature and severity of [a plaintiff's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record," it will be given controlling weight. 20 C.F.R. § 404.1527(d)(2). Whether a treating physician's assessment is inconsistent with the other substantial evidence of the medical record "is a factual determination within [the ALJ's] discretion under § 404.1527(d)(2)." *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 877 (6th Cir. 2007). The ALJ declined to accord Dr. Hooper's Assessment controlling weight, finding that it was "not supported by the medical evidence as a whole" and was inconsistent with other medical findings of record. (Tr. 24.)

Where the treating physician's opinion is not controlling, the ALJ must consider several factors in determining how much weight to accord that opinion, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions with regard to the record as a whole; and the specialization of the physician. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). There is a rebuttable presumption that the opinion of a treating physician is entitled to great deference. SSR 96-2p, 1996 WL 374188, at *4 (July 2, 1996) ("In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight."). Should an ALJ decide to accord less than great weight to a treating physician's opinion, he must provide "good reasons" for doing so that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating

12

source's medical opinion and the reasons for that weight." *Id.* at *5. Requiring an ALJ to articulate these good reasons serves a dual purpose:

> First, the explanation "let[s] claimants understand the disposition of their cases, particularly where a claimant knows that his physician has deemed him disabled and therefore might be bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." Second, the explanation "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule."

*Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242-43 (6th Cir. 2007) (quoting *Wilson*, 378 F.3d at 544).

Important to the instant matter, "unlike medical conditions that can be confirmed by objective testing, fibromyalgia patients present no objectively alarming signs." *Id.* at 243. Nevertheless, even though "[fibromyalgia] patients manifest normal muscle strength and neurological reactions and have a full range of motion," *Preston v. Sec'y of Health & Human Servs.*, 854 F.2d 815, 820 (6th Cir. 1988), "a *diagnosis* of fibromyalgia does not automatically entitle [Plaintiff] to disability benefits." *Vance v. Comm'r of Soc. Sec.,* 260 F. App'x 801, 806 (6th Cir. 2008). A treating physician's opinion that a claimant is disabled by fibromyalgia may be accorded controlling weight if the physician has treated the claimant's symptoms over a lengthy period of time and excluded other possible diagnoses, and if the finding of disability is not contradicted by other substantial evidence of record. *See Preston*, 854 F.2d at 820. In general, however, where the opinion is not supported by sufficient clinical findings or is inconsistent with other substantial evidence, an ALJ has provided adequate "good reasons" for declining to accord great weight to a treating physician's finding of disability. *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993).

After determining that Dr. Hooper's opinion was not entitled to controlling weight, the ALJ focused on the inconsistency of the physician's conclusions with the record as a whole in finding that Dr. Hooper's Assessment was also not entitled to great weight. The opinions of a treating physician are generally entitled to greater weight than the contrary opinions of a consulting physician who has examined the claimant on only a single occasion. *Rogers*, 486 F.3d at 242; *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 90 (6th Cir. 1985); *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Hurst v. Schewiker*, 725 F.2d 53, 55 (6th Cir. 1984); *Stamper v. Harris*, 650 F.2d 108, 111 (6th Cir. 1981); *Branham v. Gardner*, 383 F.2d 614, 634 (6th Cir. 1967). "[T]he more consistent an opinion is with the record as a whole, the more weight [the SSA] will give to that opinion." 20 C.F.R. § 404.1527(d)(4). The ALJ concluded that Dr. Hooper's Assessment is inconsistent with the record as a whole, including physical assessments conducted by several DDS physicians.

In his Assessment, Dr. Hooper found Plaintiff's physical abilities to be highly restricted, in stark contrast to the evaluations of three consultative DDS physicians. In their individual evaluations, Dr. Surber, Dr. Patikas, and Dr. Johnson each found Plaintiff's physical capabilities to be less restricted than did Dr. Hooper. (Tr. 355-59, 381-88, 464-67.) As it pertains to Plaintiff's exertional abilities, Dr. Hooper opined that Plaintiff could lift/carry up to ten pounds occasionally; frequently lift/carry no weight; stand or walk for less than two hours and sit four hours in an eight-hour workday; and never climb, crouch, kneel, crawl, or stoop. (Tr. 467-72.) Contrastingly, Dr. Surber found in July 2004 that Plaintiff could lift or carry up to ten pounds frequently and stand, walk, or sit up to six hours in an eight-hour work day. (Tr. 358.) Dr. Patikas found in July 2004 that Plaintiff could lift/carry up to twenty-five pounds frequently and fifty pounds occasionally and stand, walk or sit for six hours in an eight-hour workday. (Tr.

14

382.) Dr. Johnson found in August 2005 that Plaintiff could lift or carry up to five pounds occasionally, stand up to three hours, and sit up to six hours in an eight-hour workday. (Tr. 467.)

Dr. Hooper also found Plaintiff's manipulative abilities to be highly impaired in his Assessment. His finding is again the most restrictive of all evaluations of Plaintiff's abilities, and is inconsistent with the medical record as a whole. While Dr. Hooper concluded that Plaintiff's abilities to handle, finger, feel, push, and pull were impaired due to hand numbness and tingling, all three DDS evaluators found to the contrary. Dr. Surber noted that Plaintiff exhibited "bilaterally equal upper and lower limb strength at 5/5+" (Tr. 358), while Dr. Patikas determined that Plaintiff's ability to push/pull was unlimited (Tr. 382). Finally, Dr. Johnson found that Plaintiff exhibited a "[f]ull range of motion of the shoulders, elbows, wrists, hips, knees, and ankles bilaterally" and a grip strength of five out of five. (Tr. 466.)

Where an ALJ rejects the opinion of a treating physician on the grounds that it is "inconsistent with the other substantial evidence in [the] record" and is based largely on the claimant's subjective complaints, the ALJ has stated an adequate reason for giving that opinion limited weight. *Smith*, 482 F.3d at 876. Despite Plaintiff's protestations to the contrary, Dr. Hooper indicated in his Assessment that he based his opinion primarily on Plaintiff's subjective complaints. (Tr. 472.) Because the ALJ determined that Dr. Hooper's Assessment was inconsistent with the other substantial evidence contained in the medical record, discussed the evidence with which it conflicted, and found that the Assessment was based largely on subjective complaints, the ALJ articulated good reasons for declining to afford controlling or great weight to that Assessment. Therefore, the Magistrate Judge did not err in finding substantial evidence to support the ALJ's refusal to extend controlling weight to Dr. Hooper's Assessment.

15

Finally, Plaintiff objects that because Dr. Patikas is not a practicing physician and is not board certified, her assessment should be given no weight. (Doc. No. 25 at 4.) In making his determination that Dr. Hooper's Assessment was inconsistent with the other substantial evidence of the record, the ALJ did not consider Dr. Patikas' assessment. It was only upon review by the Magistrate Judge that Dr. Patikas' evaluation was discussed. (Doc. No. 24 at 22-23.) Dr. Patikas, while non-practicing and not board-certified, was a pediatric intern and resident at Vanderbilt from 1965 to 1966, and serves as a DDS evaluator. While Dr. Patikas' medical opinion might not be accorded controlling or even great weight, the Magistrate Judge's use of her assessment as supporting evidence for the ALJ's finding of inconsistency was not improper in this case.

Accordingly, Plaintiff's fourth objection is without merit.

> E. *Plaintiff objects to the Magistrate Judge's recommended finding that the demands of an assembly worker position accommodate Plaintiff's assessed residual functional capacity as found by the ALJ.*

Plaintiff asserts that the ALJ erroneously determined that her prior occupation as an assembler satisfied the restrictions imposed by her residual functional capacity ("RFC"). Plaintiff argues that she was only able to work for as long as she did despite her pain because her workplace accommodated her. (Doc. No. 25 at 4; Tr. 553-54.) Plaintiff further alleges that her RFC as established by the record precludes her from performing any of her past work, light work, and unskilled sedentary work on a sustained basis. (Doc. No. 15 at 5.) The ALJ found that Plaintiff has the RFC to perform light work[3] with a required sit/stand option, as defined in 20

---

[3] Light work is defined as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of

C.F.R. §§ 404.1567(b) and 416.967(b). (Tr. 21.) Specifically, the ALJ stated that Plaintiff could perform her "past relevant light exertional level job as an assembler because it does not exceed [Plaintiff's] current residual functional capacity for light work, [because] the job allows [Plaintiff] to alternate sitting as well as standing and the job did not require any lifting and/or carrying" as she performed it. (Tr. 24-25.) The Magistrate Judge concluded that these findings and Plaintiff's RFC were supported by substantial evidence. (Doc. No. 24 at 37-39.)

Dr. Hooper and three consultative DDS physicians, Dr. Surber, Dr. Patikas, and Dr. Johnson, all completed physical assessments of Plaintiff in order to determine her abilities over the course of an eight-hour workday. (Tr. 355-59, 381-88, 464-67.) All four physicians found that Plaintiff was capable of occasionally lifting or carrying varying amount of weight, ranging from five pounds to twenty-five pounds. Dr. Surber and Dr. Patikas found that Plaintiff could stand or walk for up to six hours; Dr. Johnson found that she could stand or walk up to three hours; and Dr. Hooper found that she could stand or walk less than two hours. Dr. Surber, Dr. Patikas, and Dr. Johnson all determined that Plaintiff could sit for up to six hours, while Dr. Hooper found that she could sit for up to four hours. Dr. Surber, Dr. Patikas, and Dr. Johnson found that Plaintiff's ability to pull or push was unlimited, while Dr. Hooper concluded that her abilities to handle, finger, feel, push or pull were impaired. Dr. Johnson noted that Plaintiff must be allowed to "variate" between sitting and standing throughout the workday.

Dr. Hooper's Assessment is the most restrictive evaluation of Plaintiff's work-related abilities, and was largely based, by his own indication, on her subjective complaints. (Tr. 472.) As discussed above, the ALJ did not err in assigning this Assessment less than great weight as a

---

arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

result of its inconsistency with the remainder of the record. In comparing the remaining three assessments with Section 404.1567(b)'s requirements for light work, two of the three evaluations found Plaintiff could lift or carry ten pounds (Tr. 358, 382-83); two of the three found Plaintiff could perform a "good deal of walking or standing" (*Id.*); and all three evaluations found Plaintiff could "sit most of the time" and do "some pushing or pulling of arm or leg controls" (Tr. 358, 382-83, 467).

Sections 404.1567 and 416.967 require that, in order to be able to perform a "full or wide range of light work," Plaintiff must have "the ability to do substantially all of these activities." Therefore, in light of the varying assessments of Plaintiff's work limitations, Plaintiff is likely correct in her assertion that she cannot return to a *full range* of light work. (Doc. No. 15 at 5-6.) However, the ALJ concluded only that Plaintiff could perform her past job as an assembly worker precisely because it fell within a *limited* range of light work in that it allowed her to alternate between sitting and standing and it "did not require any lifting and/or carrying." (Tr. 24-25.) A plaintiff's RFC may support a set of additional qualifications on her ability to perform light work, giving rise to a limited range of light work, or light work with restrictions, in which the plaintiff may still engage. *See, e.g.*, *Anderson v. Comm'r of Soc. Sec.*, 406 F. App'x 32, 33 (6th Cir. 2010); *Troxal v. Comm'r of Soc. Sec.*, 113 F. App'x 80, 82 (6th Cir. 2004); *Edwards v. Comm'r of Soc. Sec.*, 97 F. App'x 567, 569 (6th Cir. 2004).

An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that she is unable to do her past relevant work. 20 C.F.R. § 404.1505. Owing to the accommodations Plaintiff's former employer provided in light of her limitations, Plaintiff's former assembly worker position would be classified as limited light work. As such, it was not error for the Magistrate Judge to find substantial evidence

for the ALJ's determination that the demands of Plaintiff's former assembly worker position accommodated Plaintiff's assessed RFC.

**IV.     CONCLUSION**

For the reasons stated above, Plaintiff's Motion is **DENIED** and the Court **ADOPTS** the Magistrate Judge's Report in its entirety. The decision of the Commissioner is **AFFIRMED**.

It is so ORDERED.

Entered this the _____30th_____ day of June, 2011.

JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT